**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:21-cr-60253-KMM

UNITED STATES OF AMERICA

v.

LAWRENCE ALEXANDER,

    Defendant.
_____ /

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Lawrence Alexander's ("Defendant" or "Alexander") Motion *in Limine* to Admit Polygraph Evidence at Trial (ECF No. 100), and Notice of Supplemental Filing in Support (ECF No. 107). In response, the Government filed a Motion to Exclude Defendant Lawrence Alexander's Expert Testimony, or in the Alternative, Motion to Compel Additional Disclosures and Hold a *Daubert* Hearing (ECF No. 125). Defendant filed a response in opposition (ECF No. 147) to the Government's Motion. The Government filed a reply (ECF No. 154) and a Notice of Supplemental Material (ECF No. 217) in support of the Government's Motion. Alexander also filed a Notice of Filing Supplemental Exhibits (ECF No. 219). The matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, to take all necessary and proper action as required by law and/or to submit a Report and Recommendation regarding all matters and pretrial motions (ECF Nos. 37, 51, 82). A hearing on the Motions was held on October 19, 2022. Having considered the Motions, the Response, the Reply, and with the benefit of oral argument, Defendant Lawrence Alexander's Motion (ECF No. 100) is **DENIED,** and the Government's Motion (ECF No. 125) should be **GRANTED**.

## I. BACKGROUND

On August 31, 2021, a grand jury sitting in the Southern District of Florida returned an Indictment charging Alexander with conspiracy to defraud the United States and pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 (Count 6), and making false statements relating to health care matters, in violation of 18 U.S.C. § 1035 (Count 19).

In anticipation of the trial, the Parties now seek pretrial rulings regarding the admissibility of expert testimony and evidence.

On August 10, 2022, Alexander disclosed James Orr and Bart Baggett as polygraph and handwriting experts, respectively. (ECF No. 99). During the polygraph examination conducted by Mr. Orr (the "Orr polygraph"), Alexander responded "No" to the following questions:

(1) Before you learned of the FBI investigation, did you know Silent Hill was being used for illegal activity?
(2) Before learning of the FBI investigation, did you know Silent Hill was being used for illegal activity?
(3) Before you learned of the FBI investigation, did you know Jeremy Waxman was using Silent Hill for illegal activity?

(ECF No. 107-1 at 1). On September 1, 2022, in connection with his response in opposition to the Government's Motion to Exclude the Orr polygraph, Alexander also filed a report from Dr. Charles R. Honts, purporting to conduct an independent quality control review of the Orr polygraph in support of its admission. (ECF No. 147-1).

Now, Alexander seeks to admit the Orr polygraph, and the Government seeks to exclude the Orr polygraph. The Government also seeks to exclude Mr. Baggett as a handwriting expert.[1]

## II. LEGAL STANDARD

When a party moves to exclude expert witness testimony, the trial court must serve as a

---

[1] In the alternative, the Government requests that the Court hold a *Daubert* hearing and compel additional expert disclosures.

2

"gatekeeper" of expert witnesses to ensure that their testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see also Finestone v. Fla. Power & Light Co.*, 272 F. App'x 761, 767 (11th Cir. 2008) ("Pursuant to Rule of Evidence 702, as well as *Daubert* and its progeny, 'district courts must act as gatekeepers, admitting expert testimony only if it is both reliable and relevant.'").

Federal Rule of Evidence 702, amended in 2000 in response to the *Daubert* decision, states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d).

The Eleventh Circuit has required the trial court to conduct a "rigorous three-part inquiry" under Rule 702, considering whether: (1) the expert is qualified to testify competently regarding the matter she intends to address ("qualification"); (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* ("reliability"); and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue ("helpfulness"). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

Notwithstanding a finding that expert testimony meets the admissibility requirements of *Daubert* and its progeny, sometimes expert opinions may still be excluded by applying Rule 403, which requires that the probative value of the otherwise admissible evidence is not substantially

3

outweighed by its potential to confuse or mislead the jury and is not cumulative or needlessly time-consuming. Fed. R. Evid. 403; *Xtec, Inc. v. CardSmart Techs., Inc.*, No. 11-22866-CIV, 2014 WL 10250974, at *4 (S.D. Fla. Dec. 4, 2014). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

### III.    DISCUSSION

#### A.    Polygraph Expert James T. Orr

In his Motion to Admit the Orr polygraph, Alexander first argues that the Government was on notice of Alexander's polygraph and had a reasonable opportunity to conduct its own polygraph examination of Alexander. Second, Alexander argues that the results of the Orr polygraph examination are admissible under Federal Rule of Evidence 702. In that regard, Alexander asserts that Mr. Orr is qualified to testify as an expert about the polygraph examination conducted on Alexander, the Orr polygraph was reliably conducted according to reliable methods, and the Orr polygraph will assist the jury in understanding Alexander's testimony regarding his knowledge and intent. Last, Alexander argues that the Orr polygraph should be admitted despite Rule 403, because the Orr polygraph's probative value as corroborative, physiological evidence of Alexander's state of mind, substantially outweighs any prejudicial effect.

In its Motion to Exclude the Orr polygraph, the Government does not dispute that Mr. Orr is qualified to perform polygraphs. However, the Government first moves to exclude the results of the Orr polygraph as inadmissible self-serving hearsay, impermissible character evidence, and evidence amounting to an opinion on the ultimate issue in this case. Specifically, the Government argues that Alexander's answers to questions during the Orr polygraph do not satisfy Rule

801(d)(1) as prior consistent statements of a declarant-witness. To the extent Alexander's credibility as a witness is put at issue on cross-examination, the Government further argues that answers to polygraph questions are specific instances of conduct that may not be offered as evidence of Alexander's character for truthfulness under Rule 608(b). And, the Government contends that the Orr polygraph questions and answers go directly to Alexander's mental state, which is an ultimate issue for which expert opinions are inadmissible under Rule 704(b). Second, the Government argues that the Orr polygraph is not reliable, and therefore does not satisfy Rule 702 and *Daubert*, because polygraph theory and technique cannot be adequately tested, there is no consensus in the scientific community or among courts in this Circuit that polygraph evidence is reliable, and the Government is unable to confirm the reliability of the Orr polygraph as performed. Moreover, Alexander contends that the polygraph results may confuse the jury. Third, the Government argues that the probative value of the Orr polygraph is outweighed by its prejudicial effect, as the jury may afford undue weight to the Orr polygraph.

In his response to the Government's Motion to Exclude, Alexander implies that the Government's argument is disingenuous regarding the reliability of polygraph examinations, as the federal government, generally, is one of the most frequent users of polygraphs. Moreover, after filing his Motion to Admit the Orr polygraph, Alexander had the Orr polygraph independently evaluated by another polygraph expert, Dr. Charles Honts, who conducted a quality control review and determined that the Orr polygraph was reliably conducted. According to Alexander, Dr. Honts would offer his opinion on the acceptability of polygraph sciences and the Orr polygraph under the *Daubert* standard if called to testify at a *Daubert* hearing. Otherwise, Alexander does not object to producing non-attorney work-product and non-privileged documents in response to the Government's request for additional expert disclosures.

In the Government's reply in support of its Motion to Exclude, the Government reiterates many of its arguments in favor of exclusion. The Government emphasizes that the Orr polygraph, and the Honts endorsement thereof, is inadmissible post-Indictment hearsay under Rule 801(d)(1)(B), inadmissible character evidence under Rule 608(b), and an inadmissible opinion of an expert on an ultimate issue under Rule 704(b). The Government further reiterates that the Orr polygraph is unreliable, and that Dr. Honts's opinions on the Orr polygraph are themselves unreliable because Dr. Honts was not present for the Orr polygraph. Last, the Government reiterates that the probative value of the Orr polygraph is minimal compared to the prejudicial effect of putting the results before the jury.

## 1. Admissibility of Polygraphs

In the Eleventh Circuit, polygraph examinations are not *per se* inadmissible. However, "[o]pinions based on polygraph examinations are seldom, if ever, admissible into evidence." *United States v. Laurent*, — F. Supp. 3d —, No. 21-20279-CR, 2022 WL 1467626, at *3 (S.D. Fla. May 10, 2022) (quoting *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010)). "A district court may admit polygraph evidence when the parties stipulate in advance as to the test's circumstances and scope of its admissibility, or 'to impeach or corroborate the testimony of a witness at trial.'" *United States v. Henderson*, 409 F.3d 1293, 1301–02 (11th Cir. 2005) (quoting *United States v. Gilliard*, 133 F.3d 809, 811–12 (11th Cir. 1998)). The Government did not stipulate to the circumstances in advance of the test and indeed contests the methodology of the test as unreliable. Accordingly, the evidence may only be admitted here if offered to corroborate the testimony of Alexander if he testifies at trial.

To admit polygraph evidence to impeach or corroborate a witness's testimony, (1) the proponent must "provide adequate notice to the opposing party that it will offer polygraph

6

evidence," (2) the "opposing party must be given a 'reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions,'" and (3) "the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony will govern the proffer." *Id.* at 1302 (quoting *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989) (en banc)). Further, "even if admission of the polygraph evidence is proper for corroboration purposes under the first two conditions of *Piccinonna*, it must also meet the reliability and relevance standard pursuant to Federal Rule of Evidence 702, as interpreted by *Daubert*, or under any other Federal Rule of Evidence," such as Rule 403. *Laurent*, 2022 WL 1467626, at *3 (citing *Henderson*, 409 F.3d at 1301–02).

### 2. Application

Alexander contends that he has satisfied the first two requirements by providing notice to the Government and affording it an opportunity to conduct its own polygraph. His Motion to Admit proffers that the polygraph results will assist the jurors in making credibility determinations and evaluating Alexander's testimony that he lacked criminal intent. His Motion to Admit further argues that Rule 403 is satisfied because the polygraph results are highly probative of his innocence.

The Government's Motion to Exclude the expert begins with the argument that allowing admission of Alexander's polygraph results through the expert testimony would improperly allow introduction of self-serving exculpatory hearsay statements in violation of Federal Rule of Evidence 802. The Government further argues that, even after Alexander testifies and assuming his credibility is placed at issue, the one-time statements he made to the polygrapher would violate Rule 608(b) as prohibited instances of conduct. Finally, the Government notes that allowing the expert to testify about Alexander's knowledge, as opposed to any specific facts in dispute (like

7

whether he signed certain documents), would violate Federal Rule of Evidence 704(b) because his knowledge is an ultimate issue to be decided by the jury alone.

Though the Government's Motion to Exclude specifically challenges the Orr polygraph results under Federal Rules of Evidence 801, 802, 608 and 704, Alexander's Response fails to advance any counterargument in support of admissibility under the Federal Rules of Evidence. Instead, Alexander relies solely on the Eleventh Circuit's holding in *Piccinonna* that polygraph results are no longer *per se* inadmissible. This should not be confused with a holding that presumes the admissibility of polygrapher examinations. Indeed, on remand the trial court found the evidence was nonetheless inadmissible as irrelevant, and alternatively inadmissible under Federal Rule of Evidence 608. *See United States v. Piccinonna*, 729 F. Supp. 1336, 1339 (S.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991). Many courts in this Circuit have similarly refused to admit polygraph results on the grounds that the results advanced were not admissible under the Federal Rules of Evidence. *See, e.g.*, *United States v. Gilliard*, 133 F.3d 809, 816 (11th Cir. 1998) (affirming trial court's exclusion of polygraph examiner's testimony under Rule 702 and alternatively, finding danger of unfair prejudice, confusion of the issues, and misleading the jury warranted exclusion of the evidence under Rule 403); *Laurent*, 2022 WL 1467626, at *7 (finding polygraph results inadmissible under Rule 403 because "'the only thing the polygraph examination 'proves' is that the examinee believes [his] own story[ ],' not that the defendant's statements made outside the jury's presence in this case are true.") (quoting *Norelus*, 628 F.3d at 1284–85) (alterations in original); *United States v. Warner*, No. 1:13-CR-0139-CAP, 2014 WL 1373634, at *12 (N.D. Ga. Apr. 8, 2014), *aff'd*, 638 F. App'x 961 (11th Cir. 2016) (rejecting polygraph as improper under Rule 608).

At the October 19, 2022 hearing, defense counsel compared the proffered polygraph

evidence to a prior consistent statement and argued it would be admissible as such. Under Rule 801(d)(1)(B), a declarant-witness's prior statements are not inadmissible hearsay when the "declarant testifies and is subject to cross-examination about a prior statement, and the statement: . . . (B) is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground[.]" Fed. R. Evid. 801(d)(1)(B). But "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited. . . . The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told." *Tome v. United States*, 513 U.S. 150, 157 (1995). Accordingly, only prior statements made *before* the influence or motive to lie arose may be admitted to rebut the charge of recent fabrication.

The court in *Laurent* addressed the admissibility of polygraph evidence obtained after the return of an indictment:

> Federal Rule of Evidence 801(d)(1)(B) governs the admission of prior consistent out of court statements during a trial. The rule permits and accords non-hearsay status to a prior statement by a witness that is consistent with the witness's testimony at trial and is offered to corroborate the trial statement and rebut an express or implied charge of recent fabrication or improper influence or motive. The rule does not allow impermissible bolstering of the veracity of a story. The threshold inquiry for admissibility under this rule is that the consistent statement need have been made before the attachment of motive to fabricate. Whether a witness had a motive to fabricate the prior statement made is a factual question that the Court needs to decide, and it is subject to reversal only for clear abuse of discretion. Here, Defendant was charged on May 6, 2021, and the polygraph examination was conducted on October 1, 2021, shortly before the November 1, 2021 debrief meeting with the Government. It thus appears that the polygraph statements were made at a time when the motive to fabricate the statements had already attached. Therefore, even if the polygraph constituted scientific knowledge, it appears that the evidence could not meet the requirements of Rule 801(d)(1)(B).

*Laurent*, 2022 WL 1467626, at *8 n.6 (internal citations omitted).

Defense counsel argued that Alexander's polygraph statement was taken before he formed the motive to lie, though after he was named in the Indictment. Counsel argued that the event from which his incentive to lie should be measured is the date on which co-defendant Waxman indicated his willingness to testify against Alexander; before that time, counsel argued, no one was accusing Alexander of knowing about any illegality. Counsel's proffer is irreconcilable with the Indictment, which accuses Alexander of participating in a *conspiracy*, and knowingly and willfully committing the offenses charged therein. The polygrapher's examinations do not predate Alexander's motive to lie about his knowledge of the illegal scheme.

Nor is it meaningfully argued that his statements to the polygrapher would be offered for the purpose of rebutting a charge of recent fabrication. Rather, at the October 19, 2022 hearing, counsel proffered that the polygrapher's testimony would be offered to rebut an anticipated line of Government cross-examination of Alexander tending to imply that, more generally, Alexander cannot corroborate his testimony that it is Waxman, and not Alexander, who is lying about Alexander's knowledge of the scheme alleged. (Hr'g Tr. at 59, ECF No. 230). The polygraph results, advanced through the proffered expert testimony, are not admissible under Federal Rule of Evidence 801(d)(1)(B). Defendant's Motion to Admit advances no other grounds for the Court to consider the admissibility of the evidence, nor does his Response refute the support cited by the Government's Motion to Exclude that demonstrates the inadmissibility of such testimony for the purposes argued by Alexander.

The Court need not reach the question of whether Defendant's proposed expert satisfies Rule 702 because the evidence is inadmissible for the proffered purpose.[2] Accordingly,

---

[2] The Government's challenge under Rule 702 was premised generally on the lack of consensus that polygraph evidence is reliable; the only specific attack to Defendant's proffered expert assailed the sufficiency of Defendant's

10

Defendant's Motion is denied. The Government's Motion to Exclude Orr's testimony is granted.

B.    **Handwriting Expert**

The Government moves to exclude Alexander's handwriting expert, Bart Baggett. According to the Government, Mr. Baggett is not qualified to serve as an expert based on his education and background, and his proposed testimony is not reliable under Rule 702 and *Daubert* because his methodology was not sufficiently noticed or otherwise reliable.

Alexander responds that Mr. Baggett is qualified to offer an opinion as a handwriting expert. According to Alexander, Mr. Baggett, among other things, has testified as an expert in over 110 trials, completed four years of an apprenticeship with the nation's leading handwriting analysts, and teaches in the area of handwriting analysis. Moreover, as to methodology, Alexander argues that the Government may present its own expert to refute Mr. Baggett's opinions but that any challenge to methodology is a matter for cross-examination only. Finally, Alexander noted that, at the time the Response was filed, the defense was still gathering documents to be advanced through the expert, an explanation that appears to acknowledge that the disclosure was insufficient.

In the Government's reply in support of its Motion to Exclude, the Government largely reiterates its arguments in favor of excluding Mr. Baggett as a handwriting expert. Further, the Government reiterates Mr. Baggett's lack of methodology. The Government also subsequently filed a Notice attaching additional exemplars of Alexander's known signatures. Having considered the Motion, Response, the proposed opinion and supporting exhibits, I agree that Mr. Baggett's proffered testimony is not admissible under Rule 702.

---

disclosures. The Government contended that Defendant's failure to produce the audio and video recording of the administration of the test denied the Government the ability to even scrutinize whether the polygrapher adhered to recognized standards for such tests. In response, Alexander disclosed *another* expert to attest to the adequacy of the test, but did not supplement the disclosures with respect to Orr. I agree with the Government that the disclosures with respect to the proposed testifying expert—Orr—were insufficient to carry Alexander's burden, as proponent of the expert testimony, to demonstrate that the methodology employed was reliable.

First, with respect to qualification, Defendant, as proponent of the expert testimony, has failed to support his claim that Mr. Baggett is "one of this nation's top handwriting forensics experts" with any meaningful evidence. Despite disclosing hundreds of cases in which Mr. Baggett has been identified as an expert, the list of cases has omitted relevant information, such as the court or case number that might permit the Court to verify his role in any of the cases. Defendant's unsupported claim that Mr. Baggett was accepted as an expert in over one hundred trials is, on this record, not substantiated. Nor does the Response meaningfully address any of the Government's other concerns about his experience and expertise.

More significantly, and with respect to reliability, Mr. Baggett's Declaration fails to disclose any methodology. Mr. Baggett's proffered opinion is essentially based on a visual comparison of the two "Questioned" Documents—that is, the agreements produced in discovery in this case that the Government contends are signed by Alexander—against a number of "Known" documents bearing Alexander's signature. Though Mr. Baggett explains that Alexander's signature is a "simplified symbolic signature"—a design as opposed to any identifiable letters—and thus comparison requires a larger exemplar set for analysis, his report is silent as to how he chose the exemplar set on which he relied, how many exemplar signatures would be required, or critically, any explanation as to the sufficiency of the exemplar set on which he based his analysis.

Mr. Baggett further states in his report that unique features in such a signature are less obvious, but that nonetheless unique characteristics are present and can help identify the writer. From there, Mr. Baggett describes characteristics that he finds in Alexander's signature to be unique, including alignment/relationship to the signature line (*i.e.*, how far above or below), and the number of "humps" in the signature. Mr. Baggett's report offers no explanation for his

selection of these two characteristics to analyze the exemplars. More problematic, he offers no explanation for why the differences between the Questioned and Known signatures are significant with respect to either characteristic.

Despite stating that alignment is one of the most important differences between the two signatures, Mr. Baggett does not explain why this is significant. An expert who provides his opinion without any supporting factual foundation, analysis, or explanation is properly excluded by the trial court. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 (11th Cir. 2005). Also absent from Mr. Baggett's declaration is any explanation for why he did not consider other characteristics of Alexander's signature unique. Nor did he offer to account for the differences among the exemplar set. For example, while Mr. Baggett purports to identify a "master pattern" among the Known signatures, characterized by at least two and sometimes three humps, his report does not explain why it is not significant that a number of Known exemplars depict not humps but closed loops in the signatures. His ultimate conclusion, that the Questioned signature may be "excluded" as being Alexander's because it lacks the unique character of the second or third hump, would seem to likewise preclude those Known signatures from having been performed by the same person. Mr. Baggett's report makes no attempt to reconcile this apparent inconsistency, even though it does note this "tendency" for the writer to include the loop on some of the Known signatures, suggesting at least that the loop is indeed a possibly unique characteristic.

Mr. Baggett's report reaches its conclusion without supporting each step in his analysis. However, "*Daubert* requires conclusions supported by good grounds for each step in the analysis — meaning that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *La Gorce Palace Condo. Ass'n v. Blackboard Specialty Ins.*, 586 F. Supp. 3d 1300, 1311 (S.D. Fla. 2022) (quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d

1233, 1245 (11th Cir. 2005)). The disclosed opinion fails to demonstrate its reliability at each of the steps described above, and thus, fails to satisfy the second prong of the test.

Moreover, and with respect to helpfulness, review of Baggett's declaration suggests that he would offer to merely describe how the Known and Questioned signatures look different, without explaining to the jury why these differences lead him to opine that a different person affixed the Questioned signatures. The disclosed opinion arguably involves no scientific, technical or other specialized knowledge. Accordingly, Mr. Baggett's purported opinion offers nothing beyond the understanding and experience of the average citizen and it would not be helpful to the jury. For this additional reason, it should be excluded.

### IV.     CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Lawrence Alexander's Motion *in Limine* to Admit Polygraph Evidence at Trial (ECF No. 100) is **DENIED** and the Government's Motion to Exclude Defendant Lawrence Alexander's Expert Testimony, or in the Alternative, Motion to Compel Additional Disclosures and Hold a Daubert Hearing[3] (ECF No. 125) is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of January, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc:     Honorable K. Michael Moore
        Counsel of Record

---

[3] At the hearing conducted on October 19, 2022, defense counsel indicated that no hearing was sought on the Motion, which should be decided on the pleadings. As noted above, oral argument was heard on the Motion, but no witnesses were presented.